## IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE

FILED

July 13, 1999

Cecil Crowson, Jr.
Appellate Court
Clerk

| | | |
|---|---|---|
| ANNA MAY FAIR, | ) | SULLIVAN CIRCUIT |
| | ) | (No. C-32130[L] Below) |
| Plaintiff/Appellant | ) | |
| | ) | |
| v. | ) | NO. 03A01-9812-CV-00422 |
| | ) | |
| CHARLES FULTON, M.D., and | ) | HON. RICHARD E. LADD |
| INDIAN PATH HOSPITAL, INC., | ) | JUDGE |
| d/b/a HCA INDIAN PATH | ) | |
| MEDICAL CENTER, | ) | |
| | ) | |
| Defendants/Appellees | ) | AFFIRMED |

Lon V. Boyd, Kingsport, for Appellant.
M. Lacy West and Julia C. West, Kingsport, for Appellee Indian Path Hospital.
Richard M. Currie, Jr., Kingsport, for Appellee Charles Fulton, M.D.

## O P I N I O N

_____INMAN, Senior Judge

This is a malpractice action against an emergency room physician. The plaintiff alleged that on April 17, 1994 she sought treatment at the emergency room of Indian Path Hospital for severe chest pains which the defendant attributed to a fractured rib. He obtained no electrocardiogram. Three days later she returned to the emergency room suffering from chest pains. Another physician diagnosed her condition as congestive heart failure, and advised her that she had no broken rib. She alleged that the defendant was negligent in his diagnosis and treatment of her on April 17, and that he failed to exercise proper care and skill,[1] resulting in "grievous bodily injuries."

---

[1] The record does not reveal the age of the plaintiff. We infer from the affidavits that a cardiac catheterization on April 25, 1994 was successful.

The defendant filed a motion for summary judgment alleging that there is no evidence that he failed to act in accordance with the recognized standard of acceptable professional practice, or that any act or omission on his part proximately caused the plaintiff's injuries. He filed his affidavit in support of the motion, testifying that the plaintiff related an onset of sharp chest pains, worsening when she breathed, and that she had been coughing for a week. She had no nausea, vomiting, or dyspnea on exertion, but had a history of diabetes, bronchitis and hypertension. He testified that her chest was clear, that her cardiac exam was normal, and that she was tender in her lower chest. He believed that the sharp pain, worsened by breathing, was "coming from the lungs, pleura or chest wall" and was clearly not cardiac pain. A chest x-ray was normal, and he interpreted the rib x-rays as showing a possible fracture of the 10th rib, stating that it is not uncommon to see a fractured rib as a result of a hard cough.

Dr. Fulton further testified that he reassured the plaintiff of the absence of cardiac findings and that he prescribed an antibiotic for her bronchitis, together with a medication to suppress her coughing. He advised her to follow up with her personal physician if pain persisted.

The defendant reviewed the plaintiff's records after she was admitted to the hospital on April 20, three days after she was seen by him in the emergency room. He testified that the hospital records indicated that the plaintiff's diagnoses on discharge were myocardial infarction and congestive heart failure, and that the cardiac enzymes which are released into the blood as a result of a myocardial infarction were not elevated, indicating that she did not have the infarction in the preceding three days, but probably on or about April 10. He testified that when he saw her on April 17, she was not in congestive heart failure. He further testified

2

that he was familiar with the recognized standard of acceptable professional practice of emergency room physicians, and that he acted with ordinary and reasonable care in accordance with such standards, and that no act or omission on his part proximately caused the plaintiff to suffer any injuries which otherwise would not have occurred.

The plaintiff filed the affidavits of Drs. Ralph F. Morton, a cardiologist, and John J. Bandeian, Jr., in response to the affidavit of the defendant. The sufficiency of these affidavits is determinative of the issue on appeal. The trial judge held that the affidavits were not sufficient because "they state no specific act or omission of Dr. Fulton which constituted a deviation from the accepted standard of medical practice for emergency room physicians."

Our review of the findings of fact made by the trial Court is *de novo* upon the record of the trial Court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise. TENN. R. APP. P., RULE 13(d); *Campbell v. Florida Steel Corp.,* 919 S.W.2d 26 (Tenn. 1996). Summary judgment is explained in *Byrd v. Hall,* 847 S.W.2d 208 (Tenn. 1993):

> When the party seeking summary judgment makes a supported motion, the burden then shifts to the non-moving party to set forth specific facts, not legal conclusions, by using affidavits or discovery materials listed in Rule 56, establishing that there are indeed material facts creating a genuine issue that needs to be resolved by the trier of fact and that a trial is therefore necessary. The non-moving party may not rely upon the allegations or denials of his pleading in carrying out this burden as mandated by Rule 56.05.

Whether the affidavits of Drs. Morton and Bandeian, similar in content, satisfy the plaintiff's burden "to set forth specific facts, not legal conclusions" is a narrower issue. By these affidavits, these experts testified, with reference to Dr. Fulton's failure to obtain an electrocardiogram in light of the quality of the plaintiff's chest pain and her history of diabetes, hypertension, and smoking, that "many physicians

3

in this setting would obtain an ECG," and after stating their knowledge of the recognized standard of care, testified that Mrs. Fair was not treated with the ordinary and reasonable care in accordance with the recognized standard of acceptable professional practice of emergency room physicians. They further testified that "the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard and as a proximate result of defendant's act or omission the plaintiff suffered injuries which might not otherwise have occurred."

When faced with the affidavit of Dr. Fulton, the burden became one for the plaintiff to prove by expert testimony the requisite standard of care, that the defendant deviated from the standard, and that as a proximate result of Dr. Fulton's negligence or omission the plaintiff suffered injuries which would not otherwise have occurred.[2] *Estate of Henderson v. Mire,* 955 S.W.2d 56 (Tenn. App. 1997).

*Henderson* has significant application to the case at Bar. The defendant relied on his affidavit that he was familiar with the standard of care, that he did not deviate from the standard and that he did nothing that caused harm to his patient. This affidavit was held to be sufficiently precise to shift the burden to the plaintiff to come forward with proof establishing a disputed material fact respecting (1) the standard of care, (2) that defendant deviated from that standard, and (3) that as a proximate result of the defendant's negligent act, the plaintiff suffered injuries which would not otherwise have occurred. The plaintiff countered with the affidavit of an expert who testified that he was familiar with the standard of care,

---

[2]Drs. Morton and Bandeian apparently chose their words carefully, since they testified that the plaintiff suffered injuries that *might* not otherwise have occurred, appropro to the language of T.C.A. § 29-26-115(a) and *Henderson* that . . . *would* not have occurred. In light of our disposition of the case, we need not discuss the grammatical effect of the respective words.

that the defendant deviated from the standard and that plaintiff would have recovered but for defendant's negligence, but with no specificity.

We held -

"We are of the opinion, however, that the Affidavit of Dr. Tanner is insufficiently precise to demonstrate that a genuine issue of material fact exists.

. . .

Specifically, Dr. Tanner's Affidavit fails to state with any degree of precision, what, if anything, Dr. Mire did wrong in his treatment of the deceased. The Affidavit is replete with conclusions. The only assertion in Dr. Tanner's deposition approaching the failure of defendants to meet the standard of care is that the defendant 'breached the standard of care in this community when the defendants failed to diagnose, treat or intervene to provide plaintiff decedent with timely and competent care . . .' The Affidavit fails to point out the diagnosis, if any, that should have been made. It further fails to point out the treatment or intervention that should have occurred to prevent the plaintiff decedent's death. There is nothing in the Affidavit to demonstrate that as a proximate result of defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred."

The affidavits of Drs. Morton and Bandeian merely state the conclusion that the defendant failed to treat plaintiff with ordinary and reasonable care in accordance with the recognized standard of acceptable professional practice and that as a result of defendant's negligent act or omission, the plaintiff suffered injuries which might not otherwise have occurred. The conclusion is not supported by specific acts or omissions to act and is not sufficient to create a genuine issue of fact.

The plaintiff relies at length upon her belief, supported by her experts, that the defendant mistakenly diagnosed a broken rib. There is no allegation that she thereby sustained an injury; neither is there evidence of any connection between the defendant's opinion that the plaintiff had a fractured rib and her subsequent congestive heart failure.

5

The judgment is affirmed.  Costs are assessed to the appellant.  The motion of the appellee that the appeal be declared frivolous is denied.

_____
William H. Inman, Senior Judge

CONCUR:

_____
Houston M. Goddard, Presiding Judge

_____
Charles D. Susano, Jr., Judge